UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE ANTHONY REYNOLDS,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>Defendant. | No. 2:16-cv-1652-EFB<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties' cross-motions for summary judgment are pending. ECF Nos. 17 & 21. Also pending is plaintiff's motion to strike. ECF No. 27. For the reasons discussed below, plaintiff's motion to strike is granted in part and his motion for summary judgment is denied. Further, the Commissioner's motion for summary judgment is granted.

## MOTION TO STRIKE

The Commissioner lodged the administrative record on March 30, 2017. ECF No. 13. Months later, on August 30, 2017, the Commissioner filed a notice of lodging of a supplemental transcript. ECF No. 20. Contained in the supplement was a proffer letter, dated June 11, 2014,

/////

that was apparently sent to plaintiff from the administrative law judge ("ALJ").[1] ECF No. 20-3 at 2. Plaintiff argues that the court should not consider this supplement and any of the Commissioner's arguments based thereon. ECF No. 27 at 4-5. He states that the court's consideration of the proffer letter "rewards the Commissioner for selective rather than complete disclosure . . . and invites future non-compliance." *Id.* Plaintiff also argues that, if the court does elect to consider the supplement, it should: (1) take note of the fact that there is no evidence that the proffer letter was actually mailed; and (2) allow him to file a response to the Commissioner's cross-motion, including a declaration from plaintiff that he did not receive the proffer. *Id.* at 5.

The court declines to strike the Commissioner's supplement. There is no indication that the omission of this document from the initial lodging was purposeful on the part of the Commissioner. And, as the Commissioner noted in her opposition, plaintiff had until December 14, 2017 to submit his response to the Commissioner's brief and could have addressed the proffer letter therein. ECF No. 28 at 2. The court also rejects any challenge to the authenticity of the letter, to the extent plaintiff seeks to raise such a question. The Commissioner correctly notes that the record is self-authenticating pursuant to Fed. R. Civ. P. 44.[2]

The court grants plaintiff's request for leave to file a response and declaration to the Commissioner's motion for summary judgment. The proposed response and declaration are attached to the motion to strike as exhibits. ECF No. 27-1 & 27-2. The court considers these documents in adjudicating the cross motions for summary judgment.

/////

/////

/////

---

[1] In his motion for summary judgment – filed before the proffer letter was produced - plaintiff had argued that remand was required because he had not received such a letter. ECF No. 17 at 12.

[2] Under Fed. R. Civ. P. 44, an official record may be evidenced by a copy attested by the officer with legal custody of the record – or by the officer's deputy - and accompanied by a certificate that such officer has custody. Such a certification accompanies the supplemental record. ECF No. 20-1.

**I.     Background**

On September 19, 2011, plaintiff filed an application for SSI, alleging that he had been disabled since November 16, 2007. Administrative Record ("AR") 184. His application was denied initially and upon reconsideration. *Id.* at 85, 97. Plaintiff requested a hearing before an ALJ, but this request was dismissed after he failed to attend the scheduled hearing. *Id.* at 98-102. Plaintiff sought Appeals Council review and after it was determined that the initial hearing notice had not been sent to plaintiff's current address, the matter was remanded by the Appeals Council for a hearing before an ALJ. *Id.* at 104-105.

Thereafter a hearing was held before ALJ Amita Tracy. *Id.* at 50. Plaintiff was not represented by counsel at this hearing. The ALJ advised him of his right to representation at the outset and, after being so advised, plaintiff signed a waiver form indicating his desire to proceed unrepresented. *Id.* at 52-54. Testimony was heard from plaintiff, his girlfriend, and a vocational expert ("VE"). *Id.* at 50-79. The ALJ rendered a decision on September 9, 2014 and found that plaintiff was not disabled under 1614(a)(3)(A) of the Act.[3] *Id.* at 31-45.

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional

3

She made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since September 19, 2011, the application date (20 CFR 416.920(b) and 416.971 *et seq*.).

   * * *

2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease, posttraumatic stress disorder, anxiety, bipolar disorder, antisocial personality disorder, and polysubstance abuse (20 CFR 416.920(c)).

   * * *

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

   * * *

4. After careful consideration of the record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that: the claimant can occasionally climb ladders, ropes, or scaffolds; and the claimant can frequently climb ramps and stairs, balance, stoop, kneel, crouch, bend, and crawl. Additionally, the claimant should have no exposure to atmospheric conditions, and the claimant is limited to simple, routine, repetitive, tasks. Furthermore, claimant should have no interaction with the public, and the claimant is limited to superficial interaction with coworkers and supervisors.

   * * *

5. The claimant has no past relevant work (20 CFR 416.965).

   * * *

6. The claimant was a younger individual on the filing date of his application for supplemental security income (20 CFR 416.963).

   * * *

---

capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

4

7. The claimant has a limited education and he is able to communicate in English (20 CFR 416.964).

\* \* \*

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

\* \* \*

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

\* \* \*

10. The claimant has not been under a disability, as defined by the Social Security Act, since September 19, 2011, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 33-45.

Plaintiff's request for Appeals Council review was denied on February 17, 2016, leaving the ALJ's decision as Commissioner's final decision. *Id.* at 6-11.

## II. <u>Legal Standards of Review</u>

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### III. Analysis

Plaintiff argues that the ALJ erred in (1) failing to proffer Dr. Cushman's May 3, 2014 post-hearing report; (2) failing to properly weigh the opinions of Drs. King and Cushman; and (3) failing to incorporate all of plaintiff's mental limitations in the residual functional capacity assessment ("RFC").  ECF No. 17 at 12-16.

#### A. The Failure to Send a Proffer Letter

##### 1. Relevant Legal Standards

When an ALJ obtains and proposes to admit additional evidence after a plaintiff's administrative hearing, the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") advises that the ALJ proffer the evidence to the plaintiff and notify the plaintiff of his rights.  *See* HALLEX I-2-7-30.  That being said, HALLEX, "does not carry the force of law" and is not binding on this court.  *Roberts v. Comm'r of the Soc. Sec. Admin.*, 644 F.3d 931, 933 (9th Cir. 2011) (internal citations omitted) (a reviewing court will not "review allegations of non-compliance with [HALLEX's] provisions."); *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003) (where plaintiff relied on HALLEX, the district court correctly rejected plaintiff's claim because HALLEX is not binding authority, and therefore does not create legally enforceable duties).

##### 2. Background

Plaintiff argues that he did not receive the results of a post-hearing psychological examination performed by Dr. Phillip M. Cushman.  ECF No. 17 at 12.  He also states that the ALJ failed to send him a proffer letter notifying him of his ability to request a supplemental hearing based on the addition and consideration of post-hearing evidence.  *Id.*  Plaintiff cites to HALLEX for the proposition that an ALJ:

/////

/////

6

> [M]ust proffer all posthearing evidence unless:
>
> • The evidence was submitted by the claimant or the claimant's representative and there is no other claimant to the hearing.
>
> • The claimant has knowingly waived his or her right to examine the evidence. (See I–2–7–15, Waiver of the Right to Examine Posthearing Evidence.)
>
> • The ALJ proposes to issue a fully favorable decision. HALLEX I-2-7-30.

ECF No. 17 at 12. As noted *supra* in the discussion of plaintiff's motion to strike, a proffer letter *was* sent to plaintiff on June 11, 2014 which enclosed Dr. Cushman's report and notified plaintiff that he could request a supplemental hearing. ECF No. 20-3 at 2.

### 3. **Argument**

This claim fails because, even if the proffer letter had not been sent, this court does not review allegations of non-compliance with HALLEX. *Roberts*, 644 F.3d at 933. Plaintiff argues that the obligations at issue are "not solely established by HALLEX and not merely procedural." ECF No. 27-1 at 4. Specifically, he argues that consideration of post-hearing evidence without affording him a chance to respond violated 20 C.F.R. § 404.916(f) and 416.1416, the former of which provides that "we will ask for your written comments on the additional evidence, or, in appropriate cases, for your telephone comments." ECF No. 27-1 at 4. The court finds this secondary argument unpersuasive. *See Gould v. Colvin*, No. 2:14-CV-0090-TOR, 2015 U.S. Dist. LEXIS 75895, *10, 2015 WL 3650075 (E.D. Wash., June 11, 2015) ("Although Plaintiff cites to 20 C.F.R. § 404.916(f) for binding regulatory authority in accordance with HALLEX guidance regarding post-hearing evidence, this section appears to apply to hearings before a disability officer at the reconsideration stage, and not to an ALJ's initial hearing."); *see also Setzer v. Astrue*, No. 3:10-cv-05766-RJB-KLS, 2011 U.S. Dist. LEXIS 130521, *11, 2011 WL 5509422 (W.D. Wash., Oct. 18, 2011) (Holding that 20 C.F.R. § 404.916(b)(4) and § 416.1416(b)(4) "only refer to disability hearings held after an initial, revised or reconsidered adverse administrative determination has been made . . .").

In any event, it is clear that a proffer letter was mailed to plaintiff's last known address. ECF No. 20-3 at 2. Crucially, the address used by the ALJ was identical to the one at which

7

plaintiff had previously received notice of his rescheduled hearing. *Compare* AR 164 *with* ECF No. 20-3 at 2. In his response, plaintiff argues that, even if the letter was mailed, he never received it. ECF No. 27-1 at 3-4. He states that, at the time of the mailing, he was homeless. *Id.* at 4. That circumstance is unfortunate but it is unclear how it reflects any procedural deficiency on the part of the ALJ. She sent the proffer letter and relevant report to the last address plaintiff provided and, by his own admission, plaintiff did not provide the ALJ with an updated address until August 1, 2014. ECF No. 27-1 at 4.

### B. Weight Accorded the Opinions of Drs. King and Cushman

#### 1. Relevant Legal Standards

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

/////

/////

## 2. **Background**

### a. **Dr. King**

On January 15, 2012, Dr. King – a clinical psychologist - authored a letter at plaintiff's request after conducting an in-person mental health assessment. AR 325. Therein, Dr. King indicated that plaintiff presented with: (1) severe levels of anxiety; (2) moderate depression; (3) mood regulation problems; and (4) self-reported symptoms consistent with post-traumatic stress syndrome ("PTSD"), including nightmares, behavioral outbursts, exaggerated startle response, and hyper-vigilance. *Id.* Dr. King noted that plaintiff "had been exposed to a lot of violence in the past" and was "currently fearful that people are out to get him." *Id.* Plaintiff reported hearing "voices that tell me to do bad things." *Id.* Based on this assessment, Dr. King diagnosed plaintiff with the following psychiatric impairments: (1) Axis 1: Bipolar 1 with psychotic features, "PSTD"[4], pain disorder with psychological and medical factors, and nicotine dependence; (2) Axis 2: Personality Disorder NOS, and antisocial features; (3) Axis 3: Chronic low back pain and asthma; (4) Axis 4: Primary support, economic, and legal; and (5) Axis 5: 35. *Id.*

Dr. King referred plaintiff to Parole Mental Health for a psychiatric medicine evaluation and psychotherapy. *Id.* Dr. King also recommended to plaintiff's medical doctor that "mood stabilizing, and perhaps antipsychotic, medication evaluation should be considered" in the event that plaintiff could not access a psychiatrist for consultation." *Id.* With respect to employment, Dr. King stated that he was "very doubtful that [plaintiff] will be able to function adaptively in [a] work setting for a sustained period of time." *Id.*

Subsequently, on October 22, 2013, Dr. King conducted a second, "brief psychological assessment" of plaintiff. AR 326. In a brief, second letter, he stated that he had diagnosed plaintiff with chronic PTSD, polysubstance abuse, and psychosis NOS. *Id.* Dr. King also noted that plaintiff "exhibited some rapid cycling of mood and seemed to have significant impairment in his ability to regulate emotional states." *Id.*

/////

---

[4] It appears this is a typographical error and Dr. King meant "PTSD."

### b. **Dr. Cushman**

On May 3, 2014, after plaintiff's hearing before the ALJ, he was referred to Dr. Cushman by the Department of Social Services for an evaluation of his cognitive functioning. AR 354. During the evaluation, Dr. Cushman noted that plaintiff "was not always cooperative and particularly during the testing he appeared passive-aggressive, putting forth little effort or, in fact, putting effort into appearing significantly more impaired than he actually is." *Id.* Plaintiff reported to Dr. Cushman a "positive history" for hearing voices, but appeared "put off" by detailed questions regarding the quality of these voices. *Id.* at 355. Dr. Cushman noted that "[w]hile [plaintiff] did not express any specific paranoid delusions today, his presentation was hypervigilant, suspicious, and guarded. He also appeared amused with himself in putting forth little effort into the testing." *Id.*

During the evaluation, plaintiff reported a difficult childhood which involved being "picked up" by police for the first time at fifteen years old. *Id.* at 356. He also report a long history of substance abuse including: (1) heavy alcohol usage beginning at thirteen and lasting until the present; (2) marijuana usage from childhood until the present; (3) cocaine usage starting at age seventeen and regular usage throughout his twenties; (4) a first time use of heroin a "couple of months" before the evaluation with Dr. Cushman; and (5) first time use of amphetamine in his early twenties, regular use during his forties, and last usage a "couple of days" before the evaluation. *Id.* at 356-57.

Dr. Cushman administered several tests referred to as "Trails A and B," "WAIS-IV," and "Wechsler Memory Scale IV." *Id.* at 358. The Trails A was "aborted" after plaintiff proved able to count from one to ten quickly, "but then misidentified the numerals in hopes of appearing more impaired than he actually is." *Id.* The WAIS-IV test did not produce any standard scores as plaintiff put forth "extremely poor effort." *Id.* Dr. Cushman noted that the performance submitted by plaintiff was "way beyond that seen with individuals with severe brain damage [and] [i]t is highly suggestive that [plaintiff] was putting forth very little effort in hopes of appearing more impaired than he actually is." *Id.* The Wechsler Memory Scale IV also failed to produce standard scores due to plaintiff's "extremely poor effort." *Id.* at 359.

10

Despite the indeterminate outcomes of most of the foregoing tests and the obvious evidence of plaintiff's malingering, Dr. Cushman diagnosed plaintiff with the following:

- Neglect of child, by history (victim)
- Physical abuse of adult, by history (perpetrator)
- Dysthymic disorder, early onset
- Amphetamine dependence, current
- Amphetamine-induced psychotic disorder with hallucinations and delusions, current
- Amphetamine-induced mood disorder
- Alcohol dependence, current
- Alcohol-induced mood disorder
- Cannabis abuse, current
- Cocaine abuse, current
- Pain disorder associated with both psychological factors and a general medical condition, chronic
- Schizophrenia, paranoid type
- Malingering (on cognitive testing)
- Antisocial personality disorder
- Reported history of asthma, hypertension, low-back pain
- Psychosocial stressors: unemployment, limited education, juvenile and adult arrest record
- GAF: 50

*Id.* Dr. Cushman found that, as a result of the foregoing diagnoses, plaintiff did not "appear capable of performing any detailed or complex tasks in a work setting." *Id.* at 360. Dr. Cushman went on to state, with respect to work:

> [Plaintiff] does appear capable of performing simple and repetitive tasks in a work setting. He will, however, have great difficulties with regular attendance and consistent participation in a work setting, with issues involving drug abuse and inability to interact appropriately with people. He would have a difficult time working

> a normal workday or work week. Special or additional supervision would be needed in the area of monitoring for substance abuse. He will also need to be taking psychiatric medications. He will also need help managing interpersonal relationships in a work setting. He does appear capable of following simple verbal instructions from supervisors, but not complex instructions. He will have great difficulties dealing with the usual stressors encountered in a competitive work environment, as he appears highly under-socialized and has many antisocial tendencies.

*Id.*

### 3. **ALJ's Determination**

The ALJ gave little weight to Dr. King's medical opinion that plaintiff could not adapt to a competitive work setting. AR at 43. She noted that Dr. King only examined claimant on one occasion as of the date of his opinion. *Id.* The ALJ also emphasized that, aside from Dr. King's determination that plaintiff exhibited a "hypomanic presentation, an agitated affect, and pressured and slightly tangential speech," the opinion otherwise relied entirely on plaintiff's subjective complaints. *Id.* She also found that the medical evidence as a whole did not substantiate Dr. King's medical opinion. *Id.*

With respect to Dr. Cushman, the ALJ gave little weight to his finding that "[plaintiff] could perform simple, but not complex, tasks; the claimant could not maintain regular attendance in a work setting; the claimant could not work a normal workweek or workday; the claimant would need special assistance in the workplace; and the claimant could not tolerate usual workplace stressors." *Id.* She noted that Dr. Cushman reviewed "no actual medical evidence in reaching his conclusions." *Id.* The ALJ also emphasized the fact that claimant put forth poor effort during the consultative examination, which comprised the validity of Dr. Cushman's findings. *Id.* And, rather than relying on actual medical findings, Dr. Cushman relied primarily on plaintiff's self-reported substance abuse and criminal history to substantiate his findings. *Id.* Finally, the ALJ found that Dr. Cushman's opinion was inconsistent with the totality of the medical evidence, which revealed that "the [plaintiff] only displayed intermittent abnormalities through mental status examinations, he received no sustained prescribed psychotropic medications during the period at issue, and the claimant responded well to psychotherapy treatment." *Id.*

12

### 4. **Analysis**

The ALJ's reasons for according little weight to the foregoing opinions of Drs. King and Cushman were clear, convincing, and supported by the record. First, the ALJ was correct in noting that both opinions relied almost entirely on plaintiff's subjective complaints. As noted above, Dr. King issued his findings based largely on plaintiff's self-reported contentions that he experienced "severe levels of anxiety and moderate depression, mood regulation problems, and symptoms consistent with PTSD." AR at 325. Plaintiff also reported hearing voices which told him "to do bad things." *Id.* Likewise, Dr. Cushman was forced to rely almost entirely on plaintiff's self-reported history of substance abuse after plaintiff purposely attempted to skew the psychological testing results by malingering. AR at 358-60. This court has previously recognized that a psychological evaluation will necessarily rely, at least to some degree, on a patient's subjective complaints. *See Esposito v. Astrue*, No. CIV S-10-2862 EFB, 2012 U.S. Dist. LEXIS 41167 *19 (E.D. Cal. Mar. 26, 2012). It is also true, however, that "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation marks omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (affirming an ALJ's rejection of a physician opinion that was little more than a "rehashing of claimant's own statements").

There were obvious reasons for discounting plaintiff's complaints regarding the severity of his symptoms in this case. First, as noted *supra*, plaintiff repeatedly misrepresented the severity of his symptoms to Dr. Cushman in order to appear more impaired than he actually was. He deliberately sabotaged several tests by putting forth what Dr. Cushman classified as "extremely poor effort." AR at 358-59. Dr. Cushman also explicitly found that plaintiff was malingering. *Id.* at 358.

Second, plaintiff gave conflicting accounts as to his drug use. At a November 1, 2013 health assessment, plaintiff stated that: (1) his last use of amphetamine was October 22, 2013; (2) his last use of heroin was August 2013; and (3) he had used alcohol in mid-October 2013. AR at

13

348. Then, at his hearing before the ALJ on March 31, 2014, plaintiff represented that he had been clean and sober for almost a year. *Id.* at 64-65. Subsequently, in May 2014, he told Dr. Cushman that his amphetamine use was regular and essentially constant. *Id.* at 357. Indeed, plaintiff told Cushman that "he [had] used it so often that he has developed hallucinations and delusions." *Id.* He told Dr. Cushman that his last use of amphetamine was as recent as a "couple of days" prior to Cushman's evaluation in May of 2014. *Id.* And although he told the ALJ that he was no longer using alcohol, plaintiff told Dr. Cushman that he started drinking in his twenties and had continued more or less unabated through to the present. *Id.* at 356. In fact, he told Dr. Cushman that, the night before the evaluation, he had two beers and a half-pint of vodka. *Id.*

Finally, the ALJ also properly emphasized the disparity between the alleged severity of plaintiff's mental health symptoms and his course of treatment. *Id.* at 39. She noted that plaintiff had responded favorably to psychotherapy treatments in the latter of half of 2013, but nothing in the record indicates that he ever received psychotropic medications on a sustained basis.[5] *Id.* at 40. Given the severity of the mental health symptoms alleged – auditory hallucinations urging plaintiff to commit wrongdoing,[6] behavioral outbursts, frequent nightmares, and hypervigilance – it is difficult to comprehend how plaintiff could continue to see a psychotherapist monthly (Dr. King) and never be prescribed, or be referred elsewhere for prescription, or, at the very least, ask to be prescribed any medication to alleviate his deeply alarming symptoms. It would be a

---

[5] Records indicate that plaintiff was prescribed twenty milligrams of Prozac in October 2013. AR at 342. Records also indicate that plaintiff was prescribed a trial of the drug Thorazine in November of 2013. *Id.* at 322. It is unclear what became of these prescriptions. At his hearing before the ALJ, plaintiff referenced Thorazine among the medications he was taking. *Id.* at 63. He did not list this medication on the form which was submitted to the Social Security Administration in conjunction with his disability application, however. *Id.* at 251-52. Nor did he tell Dr. Cushman that he was currently taking Thorazine at the May 2014 evaluation. *Id.* at 358. Rather he noted that he had taken that medication "historically," apparently while he was in prison. *Id.*

[6] The court notes that plaintiff initially mentioned hallucinatory voices telling him "to do bad things" in a January 2012 assessment with Dr. King. AR at 325. At the time he saw Dr. Cushman in May of 2014, plaintiff continued to allege that he had auditory hallucinations of voices on a regular basis. AR at 355. Plaintiff told Cushman that the voices had never told him to hurt himself or hurt others, however. *Id.* Given that "bad things" is never defined in Dr. King's letter, it is unclear whether these statements are consistent with each other.

different matter if plaintiff alleged that the foregoing symptoms had markedly improved solely by way of therapy, but at his evaluation with Dr. Cushman plaintiff represented that he had been seeing Dr. King at La Clinica on a monthly basis for some time, that they "talk[ed] for an hour" at each of these appointments (*id.* at 358) and that, nevertheless: (1) he continued to experience auditory hallucinations (*id.* at 355); (2) his emotional state on the day of Dr. Cushman's evaluation was "bad" (*id.* at 354);[7] and (3) plaintiff had been taking the antipsychotic medication Haldol – though it had been prescribed to someone he knew rather than himself – because it helped him sleep (*id.* at 358). It is well settled that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see also Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the ALJ validly concluded that "conservative treatment" suggested "a lower level of both pain and functional limitation" than plaintiff alleged)). A likely reason for the conservative course of treatment was that some of plaintiff's latest health treatments demonstrated that he was mentally stable. In late November of 2013, plaintiff's progress notes indicated that: (1) his affect and mood were appropriate; (2) his speech was clear and coherent; (3) his sleep and appetite were "okay"; and (4) he was not in any distress at that time. AR at 323-24. Then, on January 30, 2014, a medical assessment indicated that plaintiff was "oriented to time, place, person, [and] situation." *Id.* at 329-31.

In a footnote, plaintiff disputes the ALJ's assertion that he did not receive psychotropic medication on a sustained basis. ECF No. 17 at 16 n.2. First, he argues that Dr. Cushman found that plaintiff had been taking Haldol. This assertion conveniently ignores the fact that no doctor ever prescribed that medication to plaintiff. Instead, the record indicates that plaintiff told Dr. Cushman that the Haldol belonged to someone else and that he took "two pills of unknown dosage every night to help him sleep." AR at 358. Second, plaintiff argues that a "Dr. Brenner"[8]

---

[7] In his report, Dr. Cushman indicated that he declined to ask plaintiff to follow up on this response because it was "said in a manner that this examiner did not want to inquire any further, as we were meeting alone and there was a menacing quality to [plaintiff]." AR at 354.

[8] The court notes that the assessment is actually by Dr. Jenna Brimmer. AR at 298-302.

15

determined that plaintiff was taking Tramadol. A January 4, 2012 medical evaluation does indicate that plaintiff was taking Tramadol at that time. *Id.* at 299. This record does not, however, show that plaintiff ever received prescription of any psychotropic medication on a *sustained basis*. Curiously, plaintiff appeared not to mention his Tramadol intake to Dr. King who, on January 15, 2012, noted only that "[plaintiff] reports that he has been on an antidepressant (Prozac) and mood stabilizing medication (Lamictal) in the past." *Id.* at 325. Thus, the court finds plaintiff's arguments on this point unpersuasive.

Plaintiff makes two other arguments. First, in his motion, plaintiff argues that Dr. Cushman's inability to review any medical evidence is the fault of the Commissioner insofar as the ALJ failed to submit any medical evidence for Cushman to review. ECF No. 17 at 15. It may be true that Dr. Cushman was not given medical records to review and opine on. Nevertheless, there was a clear expectation that he would be able to provide examination results which gave some insight into plaintiff's mental impairments. Given that no medical records were sent to Dr. Cushman it may be logically inferred that these examination results were the primary purpose of the referral. Plaintiff frustrated this purpose by malingering and exhibiting poor effort. The ALJ expressly noted as much in her decision (AR at 43) and this was a sufficient basis on which to assign little weight to Dr. Cushman's findings as to ability to perform work functions.

Second, in his response, plaintiff cites the Ninth Circuit's decision in *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) and emphasizes that "failure to seek or comply with treatment attributable to mental illness is not [a] basis to discredit [a] claimant." This articulation is correct, but there is no indication that the ALJ based her decision on plaintiff's failure to *seek out or comply* with a treatment regimen. Instead, she emphasized that plaintiff had been engaging with psychotherapy as of the latter half of 2013 and responded favorably. AR at 40. Her point of contention appeared to be the divide between the alleged seriousness of plaintiff's persistent mental health symptoms – articulated *supra* – and the fact that he had never received psychotropic medications on a sustained basis. *Id.* As noted above, a conservative course of treatment may be sufficient to discount a plaintiff's claims regarding the severity of his impairments. *Parra*, 481 F.3d at 751.

### C. <u>**Failure to Properly Account for Plaintiff's Mental Limitations**</u>

#### 1. <u>**Relevant Legal Standards**</u>

An RFC "is the most [a claimant] can still do despite [his] limitations" and it is "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The Ninth Circuit has previously found that moderate mental impairments and the ability to perform simple tasks may be translated into an RFC which allows for unskilled work. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-76 (9th Cir. 2008).

#### 2. <u>**Background**</u>

Plaintiff argues that, after ignoring the opinions of Drs. King and Cushman, the ALJ incorrectly found that plaintiff could superficially interact with coworkers and supervisors. ECF No. 17 at 16. He also argues that the ALJ did not fully account for his credible statements when she determined that he could complete "simple, repetitive tasks." *Id.* Finally, he states that the ALJ's limitation of plaintiff to "unskilled work" fails to account for his limitations in pace or concentration. *Id.* at 17.

#### 3. <u>**Analysis**</u>

The court notes that plaintiff's arguments regarding his "inability to interact appropriately with people" and inability to complete "simple, repetitive tasks" rely entirely on the conclusions of King and Cushman. *Id.* at 16-17. The court has already concluded that the ALJ did not err in according these opinions little weight. Thus, these claims fail.

The lone remaining argument – that the ALJ's limitation to "unskilled work" did not adequately account for limitations in pace or concentration – is also unavailing. The ALJ's decision found that plaintiff had "moderate difficulties" in "concentration, persistence, or pace." AR at 35. In *Stubbs-Danielson*, the Ninth Circuit held that the ALJ adequately accounted for a plaintiff's moderate pace limitations by imposing a limitation to simple tasks. 539 F.3d at 1173-74. And, in a more recent unpublished decision, the Ninth Circuit rejected a plaintiff's argument that an ALJ's failure to include findings of moderate limitations in concentration, persistence, and

17

pace in the RFC was reversible error. *See Mitchell v. Colvin*, 642 F. App'x 731, 732 (9th Cir. 2016) (unpublished).

### IV. **CONCLUSION**

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion to strike (ECF No. 27) is GRANTED in part insofar as the court considers his proposed reply and declaration attached thereto in resolving the pending motions for summary judgment and DENIED in all other respects.

2. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.

3. The Commissioner's cross-motion for summary judgment is GRANTED.

4. The Commissioner's decision is affirmed.

5. The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: March 15, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE